**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

ANDREA L.,

                            Plaintiff,                        No. 3:18-CV-858
                                                          (CFH)

          v.

ANDREW SAUL,[1]

                            Defendant.

_____

**APPEARANCES:**                          **OF COUNSEL:**

Lachman, Gorton Law Firm          PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorney for Plaintiff

Social Security Administration       JASON P. PECK, ESQ.
Office of Regional General Counsel  Special Assistant U.S. Attorney
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorney for the Commissioner

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

     Plaintiff Andrea L. brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying her application for supplemental security income ("SSI") benefits.  Dkt. No. 1

_____

[1] Andrew Saul was appointed Commissioner of Social Security, and has been substituted as the defendant in this action.

("Compl.").[2]  Plaintiff moves for a finding of disability or remand for a further hearing, and the Commissioner cross moves for a judgment on the pleadings.  Dkt. Nos. 9, 10. For the following reasons, the determination of the Commissioner is affirmed.

## I. Background

Plaintiff was born in 1976, and received her GED in 1994.  T. 22, 41-42.[3]  She lives in an apartment with her two children.  Id. at 41.  Plaintiff does not have a driver's license.  Id.  Plaintiff has not had a full-time job since 2002.  Id. at 42.

On October 23, 2014, plaintiff protectively filed a Title XVI application for SSI benefits.  T. 161-76.  The alleged onset date was amended to October 23, 2014.  Id. at 9.  The application was initially denied on February 19, 2015.  Id. at 77-84.  Plaintiff requested a hearing, and a hearing was held on April 13, 2017 before Administrative Law Judge ("ALJ") Kenneth Theurer.  Id. at 34-60, 87.  On May 18, 2017, ALJ Theurer issued an unfavorable decision.  Id. at 9-24.  On June 1, 2018, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final determination of the Commissioner.  Id. at 1-3.  Plaintiff commenced this action on July 23, 2018.  See Compl.

---

[2] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  Dkt. No. 6.

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Dkt. No. 8.  Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

## II. Discussion

## A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder *would have to conclude otherwise*." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the

plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based on his or her age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairments is "based [upon] objective medical facts, diagnoses or medical opinions inferable from the facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

## C. ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ determined that

plaintiff had not engaged in substantial gainful activity since October 23, 2014, the amended alleged onset date. T. 11. The ALJ found at step two that plaintiff had the severe impairments of bipolar disorder, post-traumatic stress disorder, panic disorder, and borderline personality disorder. Id. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 12. Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> understand and follow simple instructions and directions; she could perform simple tasks with supervision and independently; she could maintain attention and concentration for a simple task; she could regularly attend to a routine and maintain a schedule; she could relate to and interact with others to the extent necessary to carry out a simple task, but should avoid work requiring more complex interaction or joint efforts to achieve a work goal; she should not have more than incidental interaction with the public, by which is meant her jobs do not entail direct interaction with the public; she can handle reasonable levels of simple work-related stress, in that she can make a simple decision directly related to the completion of her tasks and work in a stable, unchanging work environment; and she has no exertional limitations.

T. 14. At step four, the ALJ found that plaintiff had no past relevant work. Id. at 22. At step five, the ALJ determined that, considering plaintiff's age, education, work experience, and RFC, there were jobs that exited in significant numbers in the national economy that plaintiff could perform. Id. Thus, the ALJ determined that plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, since October 23, 2014, the amended alleged onset date. Id. at 24.

6

**D. Arguments**

Plaintiff first argues that the ALJ failed to properly account for plaintiff's limitations. Dkt. No. 9 at 12-15. Specifically, plaintiff contends that "[t]he opinions of Dr. Moore, Dr. Harding, LMSW Gil, Dr. Briggs and Dr. Rattenbury show that [p]laintiff has a substantial loss in more than one of the basic mental activities and, therefore, is disabled." Id. at 12. Plaintiff also suggests that "[t]he ALJ further err[ed] by failing to weigh" the opinions of Dr. Briggs and Dr. Rattenbury. Id. at 12 n.2. Second, plaintiff argues that the ALJ improperly weighed the medical opinion evidence. Id. at 15-25. Third, plaintiff argues that the ALJ erred in failing to consider plaintiff's GAF scores. Id. at 25-26. Finally, plaintiff argues that the Step Five determination is not supported by substantial evidence. Id. at 27. Conversely, the Commissioner first argues that the "ALJ adequately considered and accounted for [plaintiff's] mental work-related limitations in the RFC." Dkt. No. 10 at 7-10. The Commissioner also alleges that the "record supports the ALJ's giving 'the most weight' to Dr. Harding's assessment." Id. at 10-18.

**E. Relevant Medical Evidence**

**1. Dr. Lia M. Briggs and Dr. Rattenbury**

On May 28, 2014, Dr. Briggs completed a form for the Broome County Department of Social Services, which stated that plaintiff was capable of no work activity for at least three months. T. 362. On August 29, 2014, Dr. Rattenbury completed a similar form for the Broome County Department of Social Services, which

indicated that plaintiff was not capable of work for more than six months.  Id. at 353.


## 2. Dr. Mary Ann Moore, Psy.D

On February 11, 2015, plaintiff met with Dr. Moore for a psychiatric evaluation. T. 368.  Plaintiff reported that she struggled with post-traumatic stress disorder, anxiety, depression, and bipolar disorder.  Id.  She stated that her medication helped "keep the edge off and g[a]ve [her] a little bit more motivation," but indicated that it did "not feel like it [ ] help[ed] tremendously."  Id.  Although she had a history of noncompliance with her medication, she indicated that she was compliant at the current time.  Id.  Plaintiff reported difficulty sleeping and noted that she woke up at least two times a night with bad nightmares.  Id. at 369.  She stated that she suffered from crying spells, hopelessness, feelings of sadness, hyperstartle response, and hypervigilence.  Id.  Plaintiff stated that she had five locks on her doors and her windows pinned shut with boards.  Id.  She reported nightmares, flashbacks, and intrusive thoughts about past abuse.  Id.

Plaintiff had no current thoughts of suicide, but reported loss of energy, diminished sense of pleasure, and irritability.  T. 369.  Plaintiff indicated that she worried excessively.  Id.  She stated that she had a hard time breaking free from thoughts about the past and that something bad would happen.  Id.  She stated that she did not want to leave her house because she feared something bad would happen based on her past abuse.  Id.  She reported panic attacks with heart palpitations, sweating, breathing difficulties, trembling, and some chest pain.  Id.  Plaintiff stated that

8

she could go out of her home if she absolutely needed to, but tries not to leave.  <u>Id.</u>

Plaintiff stated that she could leave her home for appointments or to get food.  <u>Id.</u>

Plaintiff did not go to the Laundromat, and washed her and her children's clothes in the

bath tub.  <u>Id.</u>  She reported hearing noises like footsteps, doors, and knocks in her

house.  <u>Id.</u>  Plaintiff also indicated manic symptoms.  <u>Id.</u>  She reported decreased need

for sleep, flight of ideas, increased goal-directed activities, agitation, pressured speech,

and excessive involvement in pleasurable activities.  <u>Id.</u>  Plaintiff felt as though her

memory and concentration were poor.  <u>Id.</u>  She stated that she had "too much going on

in [her] head."  <u>Id.</u>

Dr. Moore indicated that plaintiff was generally cooperative and responded to

questions.  T. 370.  Her manner of relating and social skills were adequate.  <u>Id.</u>

Plaintiff's hygiene was fair, and her posture slouched.  <u>Id.</u>  Her motor behavior was

lethargic and her eye contact appropriate.  <u>Id.</u>  Plaintiff's speech intelligibility was

somewhat slurred, which Dr. Moore noted could be due to her medication.  <u>Id.</u>

Plaintiff's quality of voice was monotonous, and her expressive language abilities were

adequate.  <u>Id.</u>  Plaintiff's thought processes were coherent and goal directed with no

evidence of hallucinations, delusions, or paranoia.  <u>Id.</u>  Her affect was flat, and her

mood restricted.  <u>Id.</u>  Dr. Moore noted that plaintiff rarely laughed or smiled.  <u>Id.</u>

Plaintiff's sensorium was clear, and she was oriented to time, person, and place.  Id.

Plaintiff's attention and concentration was impaired due to her depression and anxiety.

<u>Id.</u>  She was able to count and complete simple calculations.  <u>Id.</u> at 371.  She was

unable to complete serial 3s and needed reminders.  <u>Id.</u>  Plaintiff's remote memory

9

skills were impaired: she recalled three objects immediately and none after five minutes.  Id.  She could complete five digits forward and four digits backward.  Id.  Plaintiff's cognitive functioning was in the average to below average range.  Id.  Her general fund of information was appropriate to experience.  Id.  Plaintiff's insight was fair, and her judgment appeared fair to poor with continued depression, anxiety, and agoraphobia.  Id.

As to mode of living, plaintiff indicated that she could dress, bathe, and groom herself and go for a week without doing so.  T. 371.  She reported that she tries to cook and clean as needed, but often lacks the energy and motivation.  Id.  She can shop as needed, but often overspends her money.  Id.  Plaintiff indicated that she can take a bus, but reports that when she took the bus to the examination she stood by the back door and stated that she "was ready to jump."  Id.  Plaintiff indicated that she has friends where she lives, and described her family relationships as "fair," especially with her father.  Id.  She stated that she had recently begun painting plaster molds of butterflies to "lighten up the apartment for her children."  Id.  Plaintiff stated that she spends most of her day taking care of, feeding, and playing with her children.  Id.  She also watches television, and generally heads to bed at 10 p.m.  Id.

Dr. Moore opined that plaintiff had no limitation with regard to following and understanding simple directions and instruction and performing simple tasks independently.  T. 372.  She opined that plaintiff had moderate to marked limitations maintaining attention and concentration and learning new tasks and performing complex tasks independently.  Id.  Plaintiff had marked limitations appropriately dealing

10

with stress, relating adequately with others, making appropriate decisions, and maintaining a regular schedule.  Id.  Dr. Moore opined that the "results of the examination appeared to be consistent with psychiatric issues and may significantly interfere with [plaintiff's] ability to function on a daily basis."  Id.  She highly recommended that plaintiff receive consistent psychiatric and psychological treatment. Id.  Dr. Moore indicated that plaintiff's prognosis was "fair to guarded with the hope that with consistent treatment and continued medication compliance it would become more positive."  Id.

### 3. Cathi Gil, LMSW

Ms. Gil completed a Medical Assessment Form on March 3, 2017.  T. 393.  Ms. Gil stated that based on her limitations, plaintiff would be unable to work for twelve months or more.  Id.  She indicated that plaintiff was moderately limited in her ability to understand and remember instructions; correctly carry out instructions; maintain attention and concentration; make appropriate simple decisions; make appropriate decisions when faced with unfamiliar or unplanned circumstances; and maintain basic standards of personal hygiene and grooming.  Id.  Ms. Gil further stated that plaintiff was moderately limited in her ability to maintain socially appropriate behavior without exhibiting behavioral extremes (crying, yelling, walking out, etc.); interact appropriately with others in a work setting; and function in a work setting at a consistent pace.  Id. Ms. Gil indicated that plaintiff would be unable to maintain a consistent work schedule for twenty-eight through thirty days a month.  Id.  Ms. Gil stated that plaintiff suffered

from anxiety attacks and could not be around large or small groups of people, particularly men.  Id.  She indicated that plaintiff avoids people, especially men, even moving from one side of the street to the other.  Id.

### 4. Dr. T. Harding, Ph.D.

On February 18, 2015, Dr. Harding, the State agency medical consultant, reviewed plaintiff's medical records.[4]  After reviewing the medical records in his possession, Dr. Harding opined that plaintiff was not significantly limited in her ability to remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; ask simple questions or request assistance; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and be aware of normal hazards and take appropriate precautions.  T. 70-72.  Dr. Harding further opined that plaintiff was moderately limited in her ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and

---

[4] Both parties concede that Dr. Harding did not review the entire medical record.  See Dkt. No. 9 at 23; Dkt. No. 10 at 16, 17.

workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriate to criticism from supervisors; respond appropriately to changes in the work setting; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. Id.

Dr. Harding indicated that plaintiff had been diagnosed with post-traumatic stress disorder and was receiving out-patient treatment. T. 72. Dr. Harding stated that plaintiff was "able to understand, remember and follow simple 1-2 step directions"; "able to maintain concentration and pace on simple 1-2 step tasks for 2 hr intervals for entire work day"; "should be able to maintain basic social interactions to deal appropriately with co-workers and supervisors"; and "from a mental perspective[,] should be able to deal with simple stressors and changes." Id. Dr. Harding opined that plaintiff retained the ability to perform unskilled work. Id.


### F. The ALJ's Analysis of Opinion Evidence and Plaintiff's RFC

Plaintiff argues that the ALJ failed to properly account for her limitations, including her alleged inability to, and the difficulties associated with, leaving her house, as well as her panic attacks, anxiety, and difficulties with other people – especially men. See Dkt. No. 9 at 12-15. In support of her argument, plaintiff asserts that the ALJ improperly weighed the opinion evidence. Id. at 15-25.

When evaluating a claim seeking disability benefits, factors to be considered by

the ALJ include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. See Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir.1991). Generally, more weight is given to a treating source. Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2005); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "This rule applies equally to retrospective opinions given by treating physicians." Campbell v. Astrue, 596 F. Supp. 2d 445, 452 (D.Conn. 2009) (citations omitted). Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503. If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (citation omitted). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. See id. at 133-34; 20 C.F.R. § 404.1527(e) (2005).

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms. See Martone, 70 F. Supp. 2d at 150; 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." Martone, 70 F. Supp. 2d at 150. The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work. See New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960. If it is determined that a claimant cannot perform past relevant work, "the burden shifts to the Commissioner to determine whether there is other work which the claimant could perform." Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). "An ALJ should consider 'all medical opinions received regarding the claimant.'" Reider v.

Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

As an initial matter, to the extent that plaintiff argues that the "ALJ further err[ed] by failing to weigh" the opinions of Dr. Briggs and Dr. Rattenbury, the Court disagrees. Dr. Briggs and Dr. Rattenbury each submitted a one-page form, wherein they indicated that plaintiff was incapable of work for "three" and "more than six months," respectively. See T. 353, 362. The ALJ was not required to afford any deference to such statements because the issue of whether a claimant is disabled is an issue reserved to the Commissioner. See Taylor v. Barnhart, 83 F. App'x 347, 349 (2d Cir. 2003) (summary order) ("Moreover, Dr. Desai's opinion that Taylor was 'temporarily totally disabled' is not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner."); Mortise v. Astrue, 713 F. Supp. 2d 111, 125 (N.D.N.Y. 2010) ("[A]n opinion concerning the ultimate issue of disability, from any source, is reserved to the commissioner."); Fuimo v. Colvin, 948 F. Supp. 2d 260, 267 (N.D.N.Y. 2013) ("It was proper to give little weight to [Dr. Russell's] opinion, which concerned issues reserved to the Commissioner," where the opinion in question consisted of statements that the plaintiff was severely disabled and not competitively unemployable) (citing 20 C.F.R. §

16

416. 927(d)(1)).  As such, the ALJ did not err in failing to weigh Dr. Briggs and Dr. Rattenbury's opinions, as they did not contain any statements concerning plaintiff's functional limitations.  Relatedly, to the extent that plaintiff argues that the ALJ erred by failing to account for the fact that "[e]very single medical source who came in contact with [p]laintiff . . . indicates that [p]laintiff's psychiatric issues do not allow her to work consistently," Dkt. No. 9 at 13, the Court reiterates that, insofar as plaintiff's medical providers made those statements, the decision as to whether plaintiff is disabled is reserved for the Commissioner.  See Mortise, 713 F. Supp. 2d at 125.

Next, plaintiff sets forth a series of arguments as to why the ALJ erred in granting "the most weight" to Dr. Harding's opinion.  See Dkt. No. 9 at 15-25.  The ALJ afforded Dr. Harding's opinion "the most weight" based on Dr. Harding's "program and professional expertise, as well as on the review by Dr. Harding of the available evidence of record, which included the consultative psychiatric evaluation of the claimant by Dr. Moore on February 11, 2015."  Id. at 20.  The ALJ indicated that Dr. Harding opined that plaintiff could

> understand, remember, and follow simple one-two step directions; that she was able to maintain concentration and pace in simple one-two step tasks for two hour-intervals during the entire workday; that she should be able to maintain basic social interactions to deal appropriately with co-workers and supervisors; and that, from a mental perspective, she should be able to deal with simple stressors and change.

Id.  The ALJ stated that he "accounted for the restrictions that Dr. Harding placed on [plaintiff] by limiting [her] to work that require[d] only simple tasks, simple instructions, simple directions, simple decisions, and no direct interaction with the public."  Id.

17

To the extent that plaintiff suggests that the ALJ was not entitled to rely on Dr. Harding's opinion because he did not conduct an in-person examination, the Court disagrees. It is well-settled that "State agency physicians are qualified as experts in the evaluation of medical issues in disability claims" and that "their opinions may constitute substantial evidence if they are consistent with the record as a whole." See Little, 2015 WL 1399586, at *9 ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). As such, this fact alone is not grounds for remand. Moreover, insofar as plaintiff contends that Dr. Harding "overstated" plaintiff's activities of daily living, including her ability to shop and use public transportation, the Court agrees with the Commissioner that the record supports a conclusion that "while [plaintiff] had difficulty performing these activities, the fact remains that she could perform them." Dkt. No. 10 at 12. The ALJ considered these difficulties by acknowledging that plaintiff traveled to shop "even though she does not like to do so." T. 22.

The Court, however, does note that just over two years had passed between Dr. Harding's opinion and the hearing date, which raises the question as to whether Dr. Harding's opinion may be rendered stale. As stated, both parties concede that, in rendering his decision, Dr. Harding did not review the entire medical record. See Dkt. No. 9 at 23; Dkt. No. 10 at 16, 17. However, the passage of time does not automatically invalidate a medical opinion; instead, "[f]or a medical opinion to be stale, there must not only be a significant period of time between the date of the opinion and

the hearing date, there also must be subsequent treatment notes indicat[ing] a claimant's condition has deteriorated over that period." Gualtieri o/b/o M.J.G. v. Comm'r of Soc. Sec., No. 1:17-CV-821, 2019 WL 3497917, at *7 (W.D.N.Y. Aug. 1, 2019) (internal quotation marks and citations omitted). The Court finds that the ALJ did not err in relying on Dr. Harding's opinion, despite the fact that he did not have the entire medical record before him when he rendered the opinion.

There is no indication in the subsequent treatment notes that plaintiff's mental limitations "significant[ly] deteriorated" after Dr. Harding's February 2015 medical opinion. See Welsh v. Colvin, No. 14-CV-6715P, 2016 WL 836081, at *12 (W.D.N.Y. Mar. 4, 2016); T. 497-633 (detailing plaintiff's treatment notes from March 4, 2015 through April 7, 2017). In fact, plaintiff indicated in her brief that "[h]er same symptoms [from 2014 and 2015] [ ] persist[ed] into 2016 and 2017." Dkt. No. 9 at 9. Plaintiff's medical records demonstrate that she indicated that she was doing "okay" on various occasions throughout the relevant period, and that her counseling sessions had been beneficial. See, e.g., T. 507, 511, 513, 519, 530, 544, 548, 552, 559, 566, 589. She also described herself as being in a good mood. See id. at 527.

To the extent that there are comments from providers in the record that plaintiff as "not doing well," the Court notes that such notations were generally associated with external factors, rather than the deterioration of plaintiff's diagnosed conditions. See Gualtieri o/b/o M.J.G., 2019 WL 3497917, at *7 ("But these comments address a discrete period when external factors likely contributed to M.J.G.'s feelings of depression and anxiety, as opposed to deterioration of his diagnosed conditions."). For

example, on April 10, 2015, plaintiff stated that she felt "angry and edgy" because of her allergies. T. 503. On August 24, 2015, plaintiff indicated that she was "not doing very well today," but stated that her allergies and back were bothering her. Id. at 523. On February 24, 2016, plaintiff stated that she was "not doing well today" because of a cough. Id. at 571. At various other points in the record, plaintiff attributes her mental state to fears associated with seeing her ex-boyfriend. Id. at 574, 589. The Court finds the facts as they are presented in the medical record are clearly dissimilar to cases where the court has found that the medical provider's opinion is stale because plaintiff's condition had deteriorated. See, e.g., Jones v. Colvin, No. 6:14-CV-06316 MAT, 2015 WL 4628972, at *4 (W.D.N.Y. Aug. 3, 2015) ("All of these opinions were issued in 2008, while the ALJ's Second Decision was issued on October 17, 2012. This means that these physicians did not have before them approximately four years of Plaintiff's medical records, including the records related to Plaintiff's second heart attack."); Welsh, 2016 WL 836081, at *12 ("Yet Finnity examined and rendered an opinion of Welsh's limitations in June 2012, prior to the significant deterioration of her mental status described above."). Further, as the Commissioner notes, even though Dr. Harding only referenced plaintiff's post-traumatic stress disorder in his narrative assessment, his opinion makes clear that he also considered the Listings for Affective Disorders and Anxiety-Related Disorders. See T. 69; Dkt. No. 10 at 11.

Moreover, the ALJ adequately assessed plaintiff's medical records post-dating Dr. Harding's February 2015 opinion, correctly noting that plaintiff's psychiatric symptoms "periodically waxed and waned" during the relevant period. T. 16; see id. at

16-19 (assessing plaintiff's treatment records throughout the relevant period). Thus, the Court concludes that the ALJ properly assessed Dr. Harding's February 2015 report in conjunction with the other medical evidence in the record post-dating that report, in order to craft an RFC based on plaintiff's mental limitations.

Dr. Harding's opinion was also consistent with that of Dr. Moore, whom Dr. Harding relied on his making his assessment. Dr. Moore indicated that plaintiff was generally cooperative and responded to questions. T. 370. Plaintiff's manner of relating and social skills were adequate. Id. Her hygiene was fair, posture slouched, motor behavior lethargic, and eye contact appropriate. Id. Her speech intelligibility was somewhat slurred, her quality of voice was monotonous, and her expressive language abilities were adequate. Id. Plaintiff's thought processes were coherent and goal directed with no evidence of hallucinations, delusions, or paranoia. Id. Her affect was flat, mood restricted, sensorium clear, and she was oriented to time, person, and place. Id. Plaintiff had impaired attention and impaired memory skills, but could complete simple calculations, recall three objects immediately, and complete five digits forward and four digits backward. Id. at 371.

Dr. Moore opined that plaintiff had no limitation following and understanding simple directions and instructions and performing simple tasks independently; moderate to marked limitations maintaining attention and concentrating and learning new tasks and performing complex tasks independently; and marked limitations appropriately dealing with stress, relating adequately with others, making appropriate decisions, and maintaining a regular schedule. T. 372. The ALJ granted Dr. Moore's opinion "some

weight," finding that Dr. Moore's opinions concerning plaintiff's "moderate to marked" and "marked" limitations were based on plaintiff's subjective reporting and inconsistent with Dr. Moore's own mental status examination. Id. at 20-21. In rejecting this portion of Dr. Moore's opinion, the Court warns that an ALJ must not improperly substitute her "own expertise or view of the medical proof [in place of] any competent medical opinion." Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015). However, the record is clear that the ALJ stated that he took into account Dr. Moore's concerns regarding plaintiff's limitations and limited plaintiff to "simple tasks, simple work-related stress, decisions directly related to the performance of simple work, and no direct contact with the public." T. 21. The ALJ stated that Dr. Moore's opinion, "while placing some limitations on the type of work that [plaintiff] is capable of doing, does not preclude [plaintiff] from performing simple tasks in a reduced-stress and reduced-contact environment." Id.

The Court also notes that although the ALJ granted "less weight" to Ms. Gil's medical assessment form, the ALJ noted that he credited her statements that plaintiff was "moderately limited in her ability to understand and remember instructions, correctly carry out instructions, maintain attention/concentration, make appropriate simple decisions, make appropriate decisions when faced with unfamiliar/unplanned circumstances, and maintain basic standards of personal hygiene and grooming." T. 21, 393. The ALJ discredited Ms. Gil's other limitations concerning plaintiff's ability to maintain socially appropriate behavior without exhibiting behavioral extremes (crying, yelling, walking out, etc.); interact appropriately with others in a work setting; function in

a work setting at a consistent pace; and maintain a consistent work schedule for twenty-eight through thirty days a month as inconsistent with her treatment notes.  Id.  The Court concludes that the ALJ did not err in making this assessment.  As stated above, plaintiff's treatment notes indicate that she exhibited neutral or good moods on numerous occasions.  See T. 507, 511, 513, 519, 527, 530, 544, 548, 552, 559, 566, 589.  Insofar as plaintiff argues that "she often would not even leave her home to go to counseling appointments," Dkt. No. 9 at 21, the Court finds that this argument is misplaced.  Plaintiff's treatment records show two comments that indicate she cancelled appointments due to panic attacks.  See T. 419, 428.  For the most part, the records indicate that plaintiff either cancelled or rescheduled her appointments not because of her mental limitations, but, instead, due to external factors such as illness, either her's or her children's; lack of childcare; court appearances; or out-of-state travel.  See id. at 503, 515, 518, 522, 534, 535, 542, 543, 565, 573, 579, 589, 594, 600; see also Gualtieri o/b/o M.J.G., 2019 WL 3497917, at *7.  Moreover, although plaintiff alleges that she experienced "significant anxiety and/or panic symptoms" when she left the home, the Court notes that such feelings did not prevent her from leaving her house.  See Dkt. No. 9 at 21 (citing T. 371).  The record indicates that plaintiff successfully traveled to Maine for a family emergency and took her children outside to play.  T. 518, 519, 589.  Although Ms. Gil highlighted concerns with plaintiff's ability to interact with others, her treatment notes show that plaintiff spent time her friend Mary, had "genuine friends" in her apartment building, and began a new relationship.  T. 519, 562, 589.  Still, the ALJ recognized that plaintiff did have certain limitations in this area,

and restricted her to a reduced-contact work environment.  Id. at 22.

As such, "the Court is satisfied that the ALJ's RFC determination adequately accounted for [plaintiff's] mental limitations."  Ridosh v. Berryhill, No. 16-CV-6466L, 2018 WL 6171713, at *4 (W.D.N.Y. Nov. 26, 2018) (citations omitted).  The Court notes that the substantial evidence standard is "a very deferential standard of review," and that "once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault, 683 F.3d at 448 (internal quotations marks omitted).  Based on the evidence in the record, the Court concludes that substantial evidence supports the ALJ's RFC determination.

Moreover, the ALJ has the responsibility of reviewing all the evidence before him, resolving inconsistencies, and making a determination consistent with the evidence as a whole.  See Bliss v. Colvin, No. 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015).  "[I]t is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon 'adequate findings supported by evidence having rational probative force.'"  Camarata v. Colvin, No. 14-CV-0578, 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) (quoting Galiotti v. Astrue, 266 F. App'x 66, 67 (2d Cir. 2008) (summary order)).  It is clear from the ALJ's overall decision that he appropriately considered the evidence before him, including the opinions of record and plaintiff's medical records.  The Court's review of the ALJ's overall decision indicates that he properly reviewed the evidence of record and provided sufficient explanation for his analysis.  For the reasons above, the Court therefore finds that the ALJ's RFC determination (including his analysis of the opinion evidence) and

24

overall finding that plaintiff is not disabled are supported by substantial evidence.

### G. GAF Scores

Plaintiff argues that the ALJ erred in failing to consider plaintiff's GAF scores over time. See Dkt. No. 9 at 25-26. "The GAF scale indicates the clinician's overall judgment of a person's level of psychological, social, and occupational functioning. The GAF scale ranges from 1 to 100, with a score of 1 being the lowest and 100 being the highest." Camille v. Colvin, 104 F. Supp. 3d 329, 342 (W.D.N.Y. 2015), aff'd, 652 F. App'x 25 (2d Cir. 2016) (summary order). "A GAF of 41-50 indicates: Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or social functioning (e.g., no friends, unable to keep a job)." Shaw v. Colvin, No. 12-CV-0822A, 2015 WL 1646998, at *4 n.4 (W.D.N.Y. Apr. 14, 2015) (citation omitted).

The ALJ afforded "minimal weight" to plaintiff's GAF score of 45, but acknowledged that such score was "indicative of serious symptoms, and signifies that an individual has a serious impairment in one area of functioning." T. 22. However, the ALJ explained that the GAF score constitutes "only a snapshot opinion about an individual's level of mental functioning," and "[b]ecause there [was] no clear explanation of the reasons behind this GAF rating, [he] conclude[d] that [plaintiff's] GAF score fail[ed] to provide a reliable longitudinal assessment of her mental functioning." Id. He also found that the limitation was not supported by Dr. Harding's opinion. Id.

The Court notes that "as a global reference intended to aid in treatment, a GAF

score does not itself necessarily reveal a particular type of limitation and is not an assessment of a claimant's ability to work." <u>Camille</u>, 104 F. Supp. 3d at 342 (citation and internal quotation marks omitted); <u>see</u> <u>Parker v. Comm'r of Soc. Sec. Admin.</u>, No. 2:10-CV-195, 2011 WL 1838981, at *6 (D. Vt. May 13, 2011) ("Parker cites to no authority, and the Court is aware of none, holding that a GAF score — in and of itself — demonstrates that an impairment significantly interferes with a claimant's ability to work."). Moreover, "although a low GAF score may constitute evidence of severe limitations of daily functioning, it is only 'one factor' to consider in determining an individual's ability to perform substantial gainful activity." <u>Parker</u>, 2011 WL 1838981, at *6. A majority of the GAF scores plaintiff cites predate the amended alleged onset date of October 23, 2014. <u>See</u> Dkt. No. 9 at 26 (citing T. 244 (citing GAF score of 48 on May 7, 2010), 347 (citing GAF score of 45 on May 1, 2014), 348 (citing GAF score of 45 in July 2014)). The last GAF score plaintiff cites to is July 2015, less than one year into the relevant period, <u>see</u> Dkt. No. 9 at 26 (citing T. 350, 404, 407, 410), and there is no indication that such score was continually assessed in treatment notes throughout 2016 and 2017. As such, the ALJ was correct in affording "minimal weight" to the GAF scores, as the alleged severe limitations only persisted less than a year into the relevant period and do not take into account the waxing and waning of plaintiff's limitations until the date of the hearing. Accordingly, remand is not appropriate on this ground.

## H. Step Five Determination

Plaintiff argues that "since the ALJ's hypothetical to the vocational expert does not present the full extent of [p]laintiff's impairments, it is erroneous." Dkt. No. 9 at 27. The Court disagrees. As discussed above, the Court determined that the ALJ's findings regarding plaintiff's impairments and RFC are supported by substantial evidence. The hypothetical posed to the VE accurately reflected the RFC, which the Court has found to be supported by substantial evidence. Therefore, the Court finds that the ALJ's step five finding is supported by substantial evidence, and remand is not required on this basis.

## III. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that Andrea L.'s motion (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: August 30, 2019
　　　Albany, New York

Christian F. Hummel
U.S. Magistrate Judge